June 10, 2019

**Supreme Court**

No. 2016-237-Appeal.
(99-511-04)

In re Austin B.                          :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

In re Austin B.                                    :


Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Indeglia, for the Court.** The respondent, Austin B. (respondent), appeals from a Family Court order and judgment finding him delinquent for possession of child pornography, pursuant to G.L. 1956 § 11-9-1.3(a)(4).  On appeal, the respondent asserts: (1) that the Family Court magistrate erred in denying the respondent's request for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978); that the trial justice erred in (2) determining that the search warrant was supported by probable cause; (3) deciding that the police did not need to obtain a new search warrant after they determined that their original warrant was based on misinformation; and (4) not suppressing the respondent's oral statements to the police at the residence where the search warrant was executed.  For the reasons set forth in this opinion, we affirm the decisions below on issues one through three and conclude that the respondent waived argument regarding the fourth issue.

### I

### Technical Background

Because cases involving the crime of possession of child pornography often involve technical terminology, and because a basic understanding of these principles is crucial to analyze

the issues before the Court, we will begin with an overview of the technical background and vocabulary pertinent to this case before delving into the facts.

An Internet Protocol address (IP address) is a unique string of numbers that all computers or mobile devices that connect to the Internet acquire. *Commonwealth v. Martinez*, 71 N.E.3d 105, 107 (Mass. 2017) (citing Internet Corporation for Assigned Names and Numbers, Beginners Guide to Internet Protocol (IP) Addresses 2, 4 (2011)). IP addresses are owned by an Internet service provider (ISP), such as Cox Communications, Inc. (Cox). *See id.* When a person purchases Internet service from an ISP, the ISP selects from a roster of IP addresses under its control and assigns a unique IP address to the subscriber at a particular physical address. *Id.* A subscriber's IP address may change, but the ISP keeps a log of which IP address is assigned to each subscriber at any given moment in time. *Id.* In the Internet's early days, the correlation between an IP address and a subscriber to a particular computer was stronger, because a residential Internet subscriber went online using only a home computer connected to a hard-wired Internet connection. *Id.* Today, though, many subscribers use a wireless Internet router to connect their laptops, cell phones, and other mobile devices to the Internet. *See id.* These wireless routers allow multiple devices within the router's range to connect to the Internet at the same time. *Id.* Consequently, "the correlation between an Internet subscriber's assigned IP address and any one particular Internet-enabled device may often be weaker than it once was." *Id.* at 108. Nevertheless, "the correlation between an IP address and a physical address can still be strong, at least when the ISP has verified its assignment of a particular IP address to a subscriber at a specific physical address at a specific point in time." *Id.*

Additionally, the matter before the Court also concerns a "peer-to-peer file-sharing network." When a person uses these types of file-sharing services, it is akin to "leaving one's

documents in a box marked 'free' on a busy city street." Clifford Fishman & Anne McKenna, *Wiretapping and Eavesdropping* § 23:25 at 88 (2016) (internal citations omitted). In order to use a peer-to-peer network, an individual must download software for the program. Peer-to-peer networks use hash values to verify the content of electronic files that are available for copying.[1] Hash values—commonly referred to as "electronic fingerprints"—consist of "a string of numbers that, for all practical purposes, uniquely identifies a digital file" and will change any time a file is altered. *Martinez*, 71 N.E.3d at 108 n.1. Over time, law enforcement and other entities have identified and confirmed that certain hash values contain child pornography.

## II

## Facts and Travel

We now turn to the facts of the matter before us. On January 2, 2015, Coventry police detective Kevin Harris, a member of the Rhode Island Internet Crimes Against Children Task Force (ICAC),[2] informed North Smithfield police detective Stephen Riccitelli, also a member of ICAC, that on December 31, 2014, someone was using a peer-to-peer file-sharing network via the IP address 68.9.210.241, and was suspected of possessing and sharing images of child pornography. Detective Harris advised Det. Riccitelli "that a direct connection was made to the aforementioned IP address and several files of suspected child pornography were downloaded." Accordingly, Det. Riccitelli viewed one of the files and confirmed it to be consistent with the definition of child pornography contained in § 11-9-1.3.[3]

---

[1] The search warrant affidavit in this case describes a hash value as "an alpha-numeric string * * * that is calculated by applying a mathematical algorithm to the electronic data that is contained in an electronic file."

[2] The ICAC is a task force administered by the Rhode Island State Police.

[3] General Laws 1956 § 11-9-1.3 defines "child pornography" as:

With this information, Det. Riccitelli conducted an inquiry with the American Registry of Internet Numbers (ARIN) and determined that Cox was the ISP that owned the IP address. Thus, Det. Riccitelli "sent legal process to Cox Communications in order to obtain subscriber information for the account associated with the IP address" on the date in question; in response, Cox identified a Mr. Barrows of 246 Sackett Street, Unit 2, Providence, Rhode Island (246 Sackett Street) as the subscriber.[4]

Detective Riccitelli requested a "State Control package," which did not uncover relevant information, and he also performed a "cross-agency check,"[5] which revealed that Mr. Barrows was associated with 246 Sackett Street and that he was also associated with another address out of state. Moreover, Det. Riccitelli conducted surveillance in the area of 246 Sackett Street and observed what appeared to be a three-story house, "gray in color with matching gray trim[,]" and the number "246" affixed to the front. In his initial investigation, Det. Riccitelli also performed a search for 246 Sackett Street on Vision Appraisal, which indicated that Whitmarsh Corporation (Whitmarsh)

---

> "any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct where:
> "(i) The production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;
> "(ii) Such visual depiction is a digital image, computer image, or computer-generated image of a minor engaging in sexually explicit conduct; or
> "(iii) Such visual depiction has been created, adapted, or modified to display an identifiable minor engaging in sexually explicit conduct." Section 11-9-1.3(c)(1).

[4] In the warrant, Mr. Barrows was identified by his first and last name. However, because it is not alleged that Mr. Barrows had any involvement in the criminal activity giving rise to this case, we will simply refer to him as "Mr. Barrows" throughout this opinion in an effort to maintain some anonymity.

[5] Detective Riccitelli testified that a cross-agency check is something that police officers use to input an individual's name and date of birth in order to show contacts that the individual has had with other law enforcement agencies in the state.

owned the property. The appraisal company also listed 246 Sackett Street as a three-family property.

Armed with this information, Det. Riccitelli applied for a search warrant for "Computer hardware, computer software, computer-related documentation, records, documents, material, and passwords or other data security devices related to the acquisition, possession and transfer of child pornography." The search warrant permitted the search of "[t]he person of [Mr.] Barrows * * * and the premises located at 246 Sackett Street, Unit 2[.]" Detective Riccitelli also filed a supporting affidavit with his search warrant application, along with Attachments "A" and "B."[6] In the affidavit, Det. Riccitelli explained the details relating to his investigation, as well as the necessary technical background. On February 10, 2015, the District Court judge found that probable cause existed and signed the search warrant.[7]

The police executed the warrant the next day.[8] When the officers arrived at 246 Sackett Street, the front door was unlocked, and they proceeded inside. Once inside the residence, the officers continued up a staircase to the second-floor landing, where, as Det. Riccitelli later testified, there was only one door.[9] One of the officers knocked on the second-floor door, and they were

---

[6] Detective Riccitelli testified that "Attachment A" contains definitions of terms included in the items to be seized and "Attachment B" explains "volume of evidence" and talks about the technical requirements involved when searching computer systems for evidence of criminal activity. Detective Riccitelli further testified that these attachments were included with the search warrant for purposes of educating the District Court judge.

[7] We acknowledge that the terms "judge" and "magistrate" are often interspersed in the context of caselaw concerning search warrant applications. We further note that several judges, as well as a magistrate, were involved throughout the travel of this case, and many of them have since acquired new titles. For ease of reference herein, we will refer to them in their capacities at the time of the proceedings in this case.

[8] There is some discrepancy as to the number of officers that were present the morning of the search; however, the parties appear to agree that there were between six and ten officers present.

[9] Detective Riccitelli testified that he recalled two doors on the first floor, one marked with the number "1."

met by a man who identified himself as Frank Akinmurele. It was around this time that the officers learned that 246 Sackett Street was a Department of Children, Youth, and Families (DCYF) group home owned by Whitmarsh, and that Mr. Akinmurele was a Whitmarsh employee. Moreover, the officers inquired about Mr. Barrows and learned that Mr. Barrows was employed by Whitmarsh, but that he no longer worked at the 246 Sackett Street location. The officers also learned that the Internet service for 246 Sackett Street remained in Mr. Barrows' name for financial reasons, despite his employment at a different location.

Thereafter, the officers passed through the second-floor door. A few of the officers then gathered the residents and placed them in the common area while other officers executed the search warrant.[10] The second-floor layout consisted of a staff office, two bedrooms, a common area, a kitchenette, and a bathroom. In executing the search, the officers "located the router that was used for the Internet service at that location in the office." Detective Brian Macera of the Rhode Island State Police entered one of the bedrooms and located two LG cell phones next to the bed, one of which had a "cracked" screen. Detective Macera also located a binder with respondent's name on it in that bedroom. When Det. Macera attempted to view the contents of the damaged phone, he determined that the cell phone was password-protected and proceeded to the common room where the residents were sitting. Detective Macera asked the occupants whose bedroom it was that he had been in and who owned the cell phones; respondent identified the bedroom and the cell phones as his own. Upon Det. Macera's request, respondent provided his passcode to the cell phone; Det. Macera performed an "on-site preview" of the contents of the cell phone.[11]

---

[10] Detective Riccitelli testified that this was "protocol for officer safety" and to "make sure there is no one hiding and there are no other officer safety issues."

[11] At the suppression hearing and at trial, the witness testimony only spoke to the evidence found on the damaged phone.

Detective Macera's "on-site preview" of the cell phone revealed a folder entitled "Pix." In that folder, Det. Macera located approximately fifty to one hundred images that he believed to be child pornography.[12] After the images were discovered on respondent's phone, respondent was arrested, taken into custody, and transported to the Lincoln Woods State Police barracks (the barracks).[13]

On October 5, 19, and 27, 2015, a waiver hearing was held in Family Court pursuant to the state's request that the case be transferred to Superior Court. On January 28, 2016, a Family Court justice issued a bench decision denying the state's motion. Subsequently, respondent filed a motion requesting a *Franks* hearing and a motion to suppress evidence—the state objected to both motions.

### A

### Motion for a *Franks* Hearing

On March 18, 2016, the parties presented arguments concerning respondent's request for a *Franks* hearing before a Family Court magistrate.[14] The respondent asserted that he was entitled to a *Franks* hearing because Det. Riccitelli, "at a minimum[,]" provided the signing District Court judge with information in the application for the search warrant "with a reckless disregard to the truth." The respondent argued that "Cox specifically stated the information being provided was

---

[12] A later digital forensic investigation of the cell phone revealed approximately 2,480 images of child pornography. The state had originally filed a second petition against respondent for transferring child pornography, pursuant to § 11-9-1.3; however, prior to trial the state dismissed that petition.

[13] Laura Hay, the residential director of Whitmarsh at the time, was informed that respondent had been arrested, and she went to the barracks to accompany him. Ms. Hay was present when the police interviewed respondent at the barracks.

[14] In *Franks*, the United States Supreme Court announced a procedure to challenge warrants alleged to have been obtained through misleading affidavits. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).

for limited business purposes only and they could not guarantee that it represented information linking the identified customer to the State Police's investigation." The respondent acknowledged that Det. Riccitelli ran Mr. Barrows' name through the law enforcement databases and conducted physical surveillance of 246 Sackett Street and that Det. Riccitelli based the affidavit supporting the warrant on that information. However, respondent maintained that Det. Riccitelli's investigation and cross-agency check could not confirm that Mr. Barrows resided at 246 Sackett Street and did not reveal any information regarding who lived inside the home.

In opposing the motion, the state contended that Det. Riccitelli's statement that Mr. Barrows resided at 246 Sackett Street "was neither intentionally made to deceive, nor was it made in reckless disregard of the truth and, in addition, it's immaterial and irrelevant to finding probable cause in this case." The state further argued that, even if Det. Riccitelli's statement was cast aside, "there still exists a substantial basis * * * to find the probable cause to search that residence."

At the conclusion of the parties' arguments, the Family Court magistrate issued a bench decision denying respondent's motion. First, the Family Court magistrate found that respondent had standing. Next, he noted the significance of Det. Riccitelli seeking and obtaining information from Cox to ascertain subscriber information for the account associated with the IP address. The magistrate acknowledged the discrepancy between Det. Riccitelli's testimony that he could not confirm that Mr. Barrows resided at 246 Sackett Street versus the affidavit language indicating that a review of law enforcement databases confirmed that Mr. Barrows did reside there. He further highlighted Det. Riccitelli's testimony explaining that the link established in performing the cross-agency check did not necessarily mean that Mr. Barrows resided there, but rather that he had a connection to the address. Ultimately, the magistrate stated: "I cannot find, based upon the arguments and the documents that have been presented to me, that the word resides being placed

in the affidavit—and I do believe it would be hyper-technical scrutiny for the [c]ourt to do this—was intentionally and recklessly placed in the affidavit for the sole purpose of obtaining a search warrant." The magistrate also emphasized that, while not to respondent's satisfaction, Det. Riccitelli did perform follow-up investigative work when he surveilled 246 Sackett Street and completed a cross-agency check. Lastly, the magistrate found that "even if it was removed from the affidavit * * * there is still sufficient evidence" for a finding of probable cause; he therefore denied respondent's motion for a *Franks* hearing.

**B**

**Motion to Suppress**

The respondent also filed a motion to suppress the fruits of the search of 246 Sackett Street, asserting that the affidavit supporting the search warrant application was insufficient to establish probable cause. This motion was heard before a Family Court justice who later presided over the trial. The parties presented testimony and arguments on May 2 and 3, 2016. At the suppression hearing, respondent argued that the officers lacked probable cause to obtain a warrant, and contended that, pursuant to *Maryland v. Garrison*, 480 U.S. 79 (1987), the police were required to obtain a new search warrant when they realized that the warrant was based on misinformation. Specifically, respondent averred that the warrant was invalid based on Mr. Barrows being named, because Mr. Barrows did not reside at 246 Sackett Street. Further, respondent contested the use of "Unit 2," as there is no such thing as a "Unit 2" at 246 Sackett Street, and because the property was improperly listed in the warrant as a three-family residence. As such, respondent averred that the evidence obtained from the invalid search—namely, the cell phone—should be suppressed as fruit of the poisonous tree.

- 9 -

The state argued that the crucial fact in this case was that Det. Riccitelli had information about the criminal activity occurring and "that they had a fair probability that it was occurring at a particular place." The state explained that having the subscriber information and location, as well as the IP address, is sufficient to establish probable cause and has routinely been upheld in federal courts. Moreover, the state, relying on our opinion in *State v. Storey*, 8 A.3d 454 (R.I. 2010), argued that search warrants are directed at places, not people. The state further contended that the officers acted reasonably in the execution of the warrant.

At the suppression hearing, Det. Riccitelli, Det. Macera, and Ms. Hay testified, mostly reciting the facts discussed above. Detective Riccitelli's testimony is central to this matter. Detective Riccitelli testified that Det. Harris advised Det. Riccitelli that a computer user at IP address 68.9.210.241 was using a peer-to-peer file-sharing network to share files suspected to be child pornography. Detective Riccitelli testified that he viewed one of the aforementioned files and confirmed that the file was consistent with the definition of child pornography. Thereafter, Det. Riccitelli used ARIN to determine that Cox owned the IP address. Accordingly, Det. Riccitelli sent an administrative subpoena to Cox to obtain subscriber information associated with the IP address. On January 26, 2015, Cox responded to the legal process and identified Mr. Barrows, of 246 Sackett Street, Unit 2, Providence, Rhode Island, as the subscriber on the date in question. Armed with that information, Det. Riccitelli conducted a review of various law enforcement databases and confirmed that Mr. Barrows was, at one time, associated with that address. Moreover, Det. Riccitelli conducted surveillance of 246 Sackett Street and observed the structure to be a three-family residence, gray in color with matching gray trim. Detective Riccitelli stated in the affidavit that his training and experience led him to reasonably believe that a device

with Internet connection within 246 Sackett Street was used to facilitate the possession of child pornography.

On May 3, 2016, the trial justice issued a decision on respondent's motion. The court first explained that "it is reasonable to conclude that Unit 2 refers to the second floor of that property at 246 Sackett Street." The court then addressed the use of Mr. Barrows' name in the affidavit, and cited *Storey* for the proposition that search warrants are not directed at persons but instead authorize the search of places and the seizure of things. The court explained that "Mr. Barrows is like the proverbial red herring. It may smell a lot. It may smell the case up a lot, but it really has no bearing on the issue before this [c]ourt." The court found that the combination of the reasonable inferences drawn from the facts of this case "certainly indicated probable cause to search that property[.]" The trial justice upheld the validity of the search warrant and denied respondent's motion to suppress.

## C

### Bench Trial and Decision

Shortly thereafter, the trial was held on May 16 through 18, 2016. At trial, Det. Riccitelli described much of the same information that he testified to at the suppression hearing. A representative from Cox and Det. Macera also testified. On May 19, 2016, the trial justice rendered a bench decision. The trial justice recounted the testimony of Det. Riccitelli and discussed the warrant and the affidavit with attachments, noting the significance of the attachments. The trial justice then highlighted the "extensive cross-examination" that occurred regarding the issue of Mr. Barrows being named on the warrant and the reference to "Unit 2." Then, the trial justice reviewed the testimony of Det. Macera.

- 11 -

The trial justice stated that he "felt the [c]ourt had an obligation to comment on" the questions that were asked at 246 Sackett Street regarding whose room was on the second floor and whose cell phones the officer had seized. He reiterated the findings of fact that he had announced at the suppression hearing and ultimately concluded that, "based on the totality of the evidence, including the property seized, in accordance with the search warrant, the admissions made by the Respondent, after validly waiving his *Miranda* Rights, and based upon a clear reading of * * * [§] 11-9-1.3 * * * the Respondent has violated Section 11-9-1.3 of the Rhode Island General Laws, and is found to be delinquent." The trial justice sentenced respondent to commitment at the Training School until his nineteenth birthday, suspended, with probation.[15] Additionally, respondent was required to register as a sex offender for ten years following the completion of his sentence, pursuant to G.L. 1956 § 11-37.1-4(a). The respondent timely appealed.

The respondent raises four arguments on appeal: (1) the Family Court magistrate erred in denying respondent's request for a *Franks* hearing; (2) the search warrant was unsupported by evidence of probable cause; (3) the police improperly executed the warrant, as they were obligated to obtain a new search warrant once they learned that Mr. Barrows did not reside at 246 Sackett Street; and (4) respondent's statements to Det. Macera at the residence and the images recovered from his cell phone should have been suppressed.

---

[15] The respondent's nineteenth birthday was two days after his sentencing.

- 12 -

## III

## Discussion

## A

## *Franks* Hearing

In an effort to remain consistent with the travel of the proceedings below, we will first address respondent's argument that the Family Court magistrate erred in denying his request for a *Franks* hearing. In *Franks*, the United States Supreme Court announced a procedure, which we subsequently adopted, to challenge warrants allegedly obtained using misleading affidavits. *See Franks*, 438 U.S. at 155-56; *State v. Verrecchia*, 880 A.2d 89, 94 (R.I. 2005). The Supreme Court explained that "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks*, 438 U.S. at 155-56; *see State v. Tejeda*, 171 A.3d 983, 997 (R.I. 2017). Moreover, "to raise a *Franks* challenge, a defendant must establish standing in the area or items sought to be searched and seized by the challenged warrant." *State v. Patino*, 93 A.3d 40, 59 (R.I. 2014).

The respondent posits that Det. Riccitelli did not properly verify any of the information about Mr. Barrows and ignored the fact that the cross-agency check provided another address for him in addition to 246 Sackett Street. The respondent argues that the magistrate should have found that the challenged statements in the warrant application recklessly disregarded the truth and that he should have quashed the warrant and the fruits obtained therefrom.

In reviewing a request for a *Franks* hearing, this Court has explained that "[t]here must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must

be accompanied by an offer of proof." *Verrecchia*, 880 A.2d at 99 (quoting *Franks*, 483 U.S. at 171). We review a decision to deny a respondent's request for a *Franks* hearing with deference. *Tejeda*, 171 A.3d at 997. Moreover, we have stated: "If the statements under attack are found to be sufficiently false and are set aside, but 'there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.'" *Id.* (quoting *State v. DeMagistris*, 714 A.2d 567, 574 (R.I. 1998)).

The Family Court magistrate properly denied respondent's request for a *Franks* hearing. Affording deference to the magistrate, our review of the record does not reveal anything within the affidavit that rises to the level of a knowing or intelligent false statement or one made with reckless disregard for the truth. Instead, Det. Riccitelli's investigation ensued after he received information that someone was sharing child pornography on a peer-to-peer file-sharing network from a device with the IP address 68.9.210.241. Using that information, police were able to make a direct connection between the device using that IP address and downloaded child pornography. Accordingly, Det. Riccitelli learned that Cox was the ISP for that IP address, and the detective sent an administrative subpoena to Cox requesting subscriber information. The statement that Mr. Barrows resided at 246 Sackett Street did not entitle respondent to a *Franks* hearing. Even if we disregard Mr. Barrows' name in the warrant affidavit, there was probable cause for the search warrant, as explained in more detail below, when considering the information regarding the IP address, the confirmation from Cox, and Det. Riccitelli's surveillance of 246 Sackett Street.

**B**

**Search Warrant Based on Probable Cause**

On appeal, respondent raises two issues concerning the search warrant: (1) whether the warrant was based on probable cause and (2) whether the police properly executed the warrant.

- 14 -

The respondent first asserts that "[t]he search warrant drafted by the state police here got everything wrong and nothing right—not the name of its target, not the place he resided, not the specific address to be searched." The respondent contends that "[t]he underlying problem was that the state police drafted the warrant application as if they had independently verified the information supplied by Cox Communications, while knowing full well that they had not done so." Essentially, respondent challenges the adequacy of Det. Riccitelli's investigation, and argues that "[a]n IP address alone should not supply the probable cause for a search warrant when blatantly incorrect information about the identity of the alleged offender is connected to it * * *."

When this Court conducts a review of a search warrant that has issued, it accords "great deference to the issuing magistrate's probable-cause determination, so long as there is a showing of a substantial basis from which to discern probable cause." *Tejeda*, 171 A.3d at 996 (quoting *Storey*, 8 A.3d at 460). The Fourth Amendment to the United States Constitution dictates that a warrant must "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. Similarly, article 1, section 6 of the Rhode Island Constitution requires that a warrant "describ[e] as nearly as may be, the place to be searched and the persons or things to be seized." R.I. Const. art. 1, § 6. We have stated that "an affidavit offered in support of a search warrant should not be judged as if it had been drafted by one schooled in the niceties of the law nor should it be interpreted in a hypertechnical manner." *Tejeda*, 171 A.3d at 996-97 (quoting *Verrecchia*, 880 A.2d at 94). This Court has further explained that "the approach to the probable cause question should be pragmatic and flexible." *Id.* at 997 (quoting *Verrecchia*, 880 A.2d at 94). "[O]ur ultimate inquiry asks whether the magistrate made a 'practical, common-sense determination' that 'there is a fair probability that contraband or evidence of a crime will be found in *a particular place*.'" *Storey*, 8 A.3d at 461 (emphasis added).

We explained in *State v. DeLaurier*, 533 A.2d 1167 (R.I. 1987), that "the name in [a] warrant is unnecessary to the warrant's validity." *DeLaurier*, 533 A.2d at 1170; *see also Storey*, 8 A.3d at 466. Instead, "[t]he application requires the name of the owner 'if known.'" *Id.* Importantly, we have made clear that "[s]earch warrants are not directed at persons; they authorize the search of places and the seizure of things, and as a constitutional matter they need not even name the person from whom the things will be seized." *Id.* (brackets omitted) (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 555 (1978)).

This Court has not yet addressed the precise issue of whether information that an IP address at a particular physical address is being used to send or receive child pornography creates a reasonable probability that the child pornography will be found within that physical location. However, several federal and state courts have agreed that it does. *See, e.g.*, *United States v. Featherly*, 846 F.3d 237, 240 (7th Cir. 2017) (holding that "the connection between an IP address and a modem at an Internet subscriber's residence is sufficient to justify a search"); *United States v. Vosburgh*, 602 F.3d 512, 526 (3d Cir. 2010) (agreeing with "several Courts of Appeals [that] have held that evidence that the user of a computer employing a particular IP address possessed or transmitted child pornography can support a search warrant for the physical premises linked to that IP address"). In fact, respondent "acknowledges that a number of courts have found that probable cause may be established solely through evidence of an IP address connected to a specific residence rather than the identity of the subscriber."

The Massachusetts Supreme Judicial Court recently decided a case with facts similar to the matter now before us, concluding that an IP address at a certain location was sufficient to establish probable cause to search that location. *See Martinez*, 71 N.E.3d at 114. In *Martinez*, the defendant appealed from his conviction of possession of child pornography, arguing "that the police needed

to do more to link the defendant to the place searched and the items seized before a warrant could validly issue." *Id.* at 107. There, the investigating officer discovered that a computer using a specific IP address was using a peer-to-peer sharing network and sharing suspected child pornography. *Id.* at 108. The officer then conducted an Internet search and determined that Comcast Cable was the ISP for that IP address; the officer issued a subpoena to Comcast to obtain the subscriber information for the IP address. *Id.* at 108-09. After the officer obtained the defendant's name (as the subscriber) and the physical address associated with the IP address, the officer referred the investigation to the local police department, and an officer there sought and received a search warrant based on that information. *Id.* at 109.

On appeal, the central question before the court in *Martinez* was whether the information that the IP address had been assigned at the time in question to an Internet subscriber at a specific physical address was "sufficient to establish probable cause for the search, even though the named subscriber was neither listed as, nor confirmed to be, living in the unit, and even though police had no information before the search linking the defendant to the residence." *Id.* at 110. In holding that the warrant was valid, that court concluded "that there was probable cause to search for evidence related to sharing child pornography based on the information police obtained through their [peer-to-peer network] surveillance and the administrative subpoena, independent of whose name was on the Internet account or in the housing development's records." *Id.* at 111-12. Moreover, the court stated that: "The temporal and geographical links between the target IP address and the physical address to be searched provided a substantial basis for concluding that evidence sought (computers and related items) was connected to the suspected crime (possessing or sharing child pornography) and likely would be found at the specified premises (the apartment),

and therefore gave rise to a sufficient nexus between the suspected criminal activity and the residence." *Id.* at 111.

We are mindful that searches of computers and cell phones lend themselves to situations where the danger of the Fourth Amendment's privacy concerns may well be at its greatest. Nevertheless, we are satisfied that Det. Riccitelli's actions here alleviate those concerns. In line with the officers' investigations in *Martinez*, Det. Riccitelli did take steps to corroborate and develop the information he received from Det. Harris. While Det. Riccitelli might have been more thorough in his investigation, the law does not require him to do so. Upon being informed that the IP address 68.9.210.241 was suspected of involvement with child pornography, Det. Riccitelli reviewed the images associated with that IP address and confirmed that the images were consistent with the definition of child pornography in the statute, based on his training and experience. Then, Det. Riccitelli determined that Cox was the ISP for the IP address at issue, and he accordingly requested subscriber information from Cox. After learning the physical address associated with the IP address, Det. Riccitelli performed a cross-agency check and confirmed that Mr. Barrows, the named subscriber, had once had an affiliation with the address. The respondent makes much of the fact that Det. Riccitelli used the word "resides" in the affidavit. Like the trial justice, however, we do not find the use of that word to be detrimental here.[16] Detective Riccitelli provided more than enough information in the warrant application and supporting affidavit to establish "a

---

[16] We note that the Internet user being a resident of 246 Sackett Street is of no moment. There was still probable cause to search the residence because modems and routers, used to connect to the Internet, maintain logs of the devices that connect to them. *See Commonwealth v. Martinez*, 71 N.E.3d 105, 114 n.10 (Mass. 2017). That information is valuable evidence, as it may assist in leading police to an offending device, even if an offending individual's device is not at the residence at the time of the search.

fair probability that contraband or evidence of a crime would be found" at 246 Sackett Street. *Storey*, 8 A.3d at 463 (brackets omitted) (quoting *State v. Byrne*, 972 A.2d 633, 638 (R.I. 2009)).

In *Storey*, we upheld the validity of a search warrant, holding that "there was probable cause to search the entire *place* articulated in the warrant, [so] it was not necessary for the magistrate to take into account who else was living there when he authorized the place to be searched." *Storey*, 8 A.3d at 466 (emphasis in original). Similarly, here, the warrant application listed the correct IP address and the correct physical address linked to that IP address. The fact that Mr. Barrows was personally named, but not a resident of 246 Sackett Street, does not invalidate the warrant. As in *Martinez*, we opine that Det. Riccitelli's investigation established probable cause to search for evidence relating to child pornography at 246 Sackett Street, Unit 2, despite Mr. Barrows being the named person in the search warrant. Accordingly, we affirm the hearing justice's denial of respondent's motion to suppress.

## C

### Execution of the Search Warrant

Additionally, respondent asserts that, even if the warrant was based on probable cause when issued, "it should have become immediately clear to the officers upon entering the Sackett Street group home that they were confronted with a plethora of new information and they needed a new warrant." The respondent argues that the police were required to seek a new warrant when they entered 246 Sackett Street, proceeded to the second floor to an unmarked door, and when Mr. Akinmurele informed them that: (1) it was a DCYF group home for minor residents, not a multifamily structure and (2) Mr. Barrows—the named target of the warrant—was a Whitmarsh employee but did not reside there. The respondent contends that "because the location the magistrate intended to be searched in the warrant was diametrically different than the place the

- 19 -

officers searched, the evidence seized therein should have been suppressed." To the contrary, the state argues that the warrant permitted the police to search "Unit 2" and that the police were reasonable in believing that the second floor of the building constituted that unit.

This Court's "review of whether a warrant states with sufficient particularity (or as nearly as may be) the description of the place to be searched * * * requires bifurcation." *Storey*, 8 A.3d at 460. We afford great deference through application of the clearly erroneous standard to the "findings of fact made by the trial justice in denying a motion to suppress for want of particularity[.]" *Id.* Thereafter, this Court conducts a *de novo* review in "the application of constitutional law regarding particularity to the facts." *Id.*

The respondent relies heavily on *Garrison* for the proposition that the officers, upon learning new information about the use of 246 Sackett Street and the fact that Mr. Barrows did not reside there, were required to seek a new warrant. In *Garrison*, the police obtained a search warrant for the third-floor apartment of a suspect named McWebb. *Garrison*, 480 U.S. at 80. "When the police applied for the warrant and when they conducted the search pursuant to the warrant, they reasonably believed that there was only one apartment on the premises described in the warrant." *Id.* As it turned out, however, there were two apartments, and the police initially entered the wrong one, where the defendant resided. *Id.* Before the officers realized they were in the wrong apartment, they discovered contraband leading to the defendant's arrest. *Id.* The defendant filed a motion to suppress the evidence found in his apartment, arguing that the search was invalid pursuant to the Fourth Amendment to the United States Constitution. *Id.* at 80-81. The Supreme Court upheld the trial court's decision to deny the suppression motion, reasoning that "[t]he objective facts available to the officers at the time suggested no distinction between McWebb's apartment and the third-floor premises." *Id.* at 88. The Court explained that, if the officers had

become aware of their mistake prior to entering the apartment, they would have been obligated to limit their search. *Id.* at 86. Further, the Court stated: "Prior to the officers' discovery of the factual mistake, they perceived McWebb's apartment and the third-floor premises as one and the same; therefore their execution of the warrant reasonably included the entire third floor." *Id.* at 88. In conclusion, the Court noted that "the officers' conduct was consistent with a reasonable effort to ascertain and identify the place intended to be searched within the meaning of the Fourth Amendment." *Id.* at 88-89.

The facts of this case are distinct from those of *Garrison*. In *Garrison*, the officers were in the wrong apartment because there were two apartments on the third floor, instead of one. Here, the fact that 246 Sackett Street was being operated as a group home does nothing to invalidate the fact that the officers reasonably and objectively believed that the only second-floor apartment constituted the "Unit 2" that the warrant authorized them to search.

Detective Riccitelli had received credible information that a crime had occurred through the use of the IP address. Detective Riccitelli then went through the phases of his investigation to determine that the IP address was associated with the physical address of 246 Sackett Street, Unit 2, and that the structure was a multifamily unit. There is nothing in the record to indicate that Det. Riccitelli had any information that Unit 2 did not exist. When the police arrived at 246 Sackett Street, they proceeded to the second floor of the structure and knocked on the only door there. Upon passing through the door, the officers were confronted with a layout consistent with an apportioned multifamily structure. The respondent's bedroom was on the second floor, and the cell phone containing child pornography was seized from that bedroom.

Further, as discussed at length herein, Mr. Barrows' whereabouts is irrelevant to the execution of the warrant as his name was not required for a valid warrant to issue. The

respondent's suggestion that Mr. Akinmurele's statements to the police required them to get a new warrant is also misplaced. *See United States v. Ayers*, 924 F.2d 1468, 1479-80 (9th Cir. 1991) (holding that the police had the right to execute the warrant, notwithstanding the defendant's mother's statement that the defendant did not reside at the residence, because the police had independently confirmed the address in their investigation). Mr. Akinmurele could have been Mr. Barrows, or could have been the suspect using a device associated with the IP address. Consequently, the police here acted reasonably based on the objective facts known at the time. The warrant described the place to be searched and the items to be seized with sufficient particularity, and the officers were permitted to perform the search on that existing warrant.

**D**

**Custodial Interrogation at the Home**

For the first time on appeal, respondent raises a custodial-interrogation argument, asserting that his statements to police at 246 Sackett Street and the evidence obtained from his cell phone as a result of those statements should be suppressed. Specifically, respondent now contends that "even if one were to assume that the state police entered and searched the group home pursuant to a valid search warrant, the statements [respondent] made to the police while detained inside his home * * * should have been suppressed because at the time those statements were made [respondent] was a juvenile in police custody and under interrogation who had not been advised of his rights." The respondent challenges his statements to police admitting his residence in the searched bedroom, acknowledging his ownership of the cell phone, and providing his PIN number needed to access the phone's contents.[17]

---

[17] The respondent does not raise any argument on appeal concerning statements made at the barracks after his arrest.

- 22 -

The state maintains that respondent's arguments regarding custodial interrogation and any statements he gave while the officers searched the home are waived. The state highlights that respondent failed to raise the argument below and, even when encouraged by the trial justice to do so, only disputed the admissibility of his statements at the barracks or referred back to his search warrant arguments.

Pursuant to our "raise-or-waive" rule, we will not consider respondent's arguments pertaining to this issue on appeal. *See State v. Romero*, 193 A.3d 1167, 1170-71 (R.I. 2018) (explaining that "[i]n accordance with this Court's longstanding 'raise-or-waive' rule, if an issue was not properly asserted, and thereby preserved, in the lower tribunals, this Court will not consider the issue on appeal") (quoting *Miller v. Wells Fargo Bank, N.A.*, 160 A.3d 975, 980 (R.I. 2017)). We have made clear that, "in order to satisfy the strictures of our 'raise-or-waive' rule, an evidentiary objection must be 'sufficiently focused so as to call the trial justice's attention to the basis for said objection.'" *State v. Diefenderfer*, 970 A.2d 12, 30 (R.I. 2009) (deletion omitted) (quoting *State v. Warren*, 624 A.2d 841, 842 (R.I. 1993)). "A mere oblique reference to an issue that is not litigated and upon which a factual predicate is not even sought to be made furnishes no basis for appellate review." *State v. Fogarty*, 433 A.2d 972, 974 (R.I. 1981).

Prior to trial, respondent filed a motion challenging the validity of the search warrant, arguing that his statements at the barracks should be suppressed as fruit of the poisonous tree. During closing arguments at the suppression hearing on May 3, 2016, the trial justice explained that his understanding was that the suppression hearing "was directed, essentially, towards the search warrant and the execution of the search warrant and not whether or not the statements made by the Respondent were in any way coerced or in violation, say, of his *Miranda* rights." At that

time, respondent's counsel specifically stated: "[T]here hasn't been an issue raised with respect to whether my client was in custody for *Miranda* purposes when he gave those answers."

Notably, the trial justice invited the respondent to brief the issue of custodial interrogation and also invited the respondent to file a motion and have another hearing on the issue, notwithstanding the respondent's failure to make a motion on those grounds. Anytime the topic of custodial interrogation at 246 Sackett Street did arise at trial, the respondent's arguments consistently referred back to the search-warrant argument, contending that the statements should be suppressed as fruit of the poisonous tree. At trial, the respondent's counsel asked Det. Riccitelli: "Prior to being interrogated at the police station, [the respondent] did not make a statement to the police, correct?" Detective Riccitelli responded: "Prior to his interview, no." After that question, counsel continued with her cross-examination, never probing Det. Riccitelli on the subject of custodial interrogation at 246 Sackett Street. In rendering his decision, the trial justice noted, as he did at the suppression hearing, that the court "did not find that a significant challenge was made by Respondent to the voluntariness of the statement or the voluntary waiver of his rights under *Miranda*." The trial justice further stated that "[e]verything that was indicated, in the [c]ourt's opinion, in the nature of challenge, was to the original search warrant and the basis for that, including the affidavit." Ultimately, the trial justice made his own ruling on the matter, concluding that the respondent was not in custody at 246 Sackett Street and that the respondent "volunteered answers to both questions[.]" For these reasons, we hold that the respondent waived any argument regarding custodial interrogation at 246 Sackett Street.

## IV

## Conclusion

For the above-stated reasons, we affirm the judgment of the Family Court. The record shall be returned to that tribunal.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | In re Austin B. |
| **Case Number** | No. 2016-237-Appeal.<br>(99-511-04) |
| **Date Opinion Filed** | June 10, 2019 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Gilbert V. Indeglia |
| **Source of Appeal** | Providence County Family Court |
| **Judicial Officer From Lower Court** | Associate Justice Howard I. Lipsey |
| **Attorney(s) on Appeal** | For State:<br><br>Owen Murphy<br>Department of Attorney General |
| | For Respondent:<br><br>Lara Montecalvo<br>Office of the Public Defender |