June 30, 2021

**Supreme Court**

No. 2018-27-C.A.
(K2/15-791A)
(Concurrence and dissent begins on Page 19)

| State | : |
| --- | --- |
| v. | : |
| Ralph Reisner. | : |

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email: opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State               :

v.                  :

Ralph Reisner.        :

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

## O P I N I O N

**Justice Lynch Prata, for the Court.** On May 24, 2017, a Kent County Superior Court jury found the defendant, Ralph Reisner, guilty of possession of child pornography in violation of G.L. 1956 § 11-9-1.3.[1] He was thereafter sentenced to a suspended term of five years at the Adult Correctional Institutions, with probation. The defendant was also ordered to meet special conditions of probation and to register as a sex offender.

The defendant raises two issues on appeal before this Court. First, he challenges the order denying his motion to suppress evidence that was seized from his home, arguing that there was no probable cause to support the issuance of a search warrant. Second, he argues that the trial justice erred in denying his motion

---

[1] The jury found the defendant not guilty on a second count, transferring child pornography in violation of G.L. 1956 § 11-9-1.3.

for a mistrial, maintaining that the prosecutor's reference during opening statements to a portion of defendant's statement that had been previously excluded from evidence warranted a mistrial. For the reasons outlined in this opinion, we vacate the judgment of the Superior Court.

## Technical Background

Because cases involving the crime of possession of child pornography often involve technical terminology, and because a basic understanding of the technology in play is critical to an analysis of the issues before the Court in the present case, we begin with an overview of the technical background and terminology that is pertinent to this case.

"An Internet Protocol address (IP address) is a unique string of numbers that all computers or mobile devices that connect to the Internet acquire." *In re Austin B.*, 208 A.3d 1178, 1181 (R.I. 2019) (citing *Commonwealth v. Martinez*, 71 N.E.3d 105, 107 (Mass. 2017)). "IP addresses are owned by an Internet service provider (ISP)," such as Verizon Internet Service (Verizon). *Id.* When someone purchases Internet service from an ISP, the ISP "assigns a unique IP address to the subscriber at a particular physical address." *Id.* (citing *Martinez*, 71 N.E.3d at 107). The subscriber's "IP address may change, but the ISP keeps a log of which IP address is assigned to each subscriber at any given moment in time." *Id.* (citing *Martinez*, 71 N.E.3d at 107). "[T]he correlation between an IP address and a physical address" is

strong, "at least when the ISP has verified its assignment of a particular IP address to a subscriber at a specific physical address at a specific point in time." *Id.* (quoting *Martinez*, 71 N.E.3d at 107).

In addition, this case also concerns "peer-to-peer file-sharing network[s]." *In re Austin B.*, 208 A.3d at 1181. "When a person uses [those] types of file-sharing services, it is akin to 'leaving one's documents in a box marked *free* on a busy city street.'" *Id.* (emphasis added) (quoting Clifford Fishman & Anne McKenna, *Wiretapping and Eavesdropping* § 23:25 at 88 (2016)). "[T]o use a peer-to-peer network, an individual must download software for the program." *Id.* People use peer-to-peer networks for a variety of reasons, including downloading music and videos, and to share computing resources. "Peer-to-peer networks use hash values to verify the content of electronic files that are available for copying." *Id.* Hash values, which are often referred to as "'electronic fingerprints[,]' * * * consist of a 'string of numbers that, for all practical purposes, uniquely identifies a digital file' and will change any time a file is altered." *Id.* (quoting *Martinez*, 71 N.E.3d at 108 n.1). Law enforcement and other entities have over time "identified and confirmed that certain hash values contain child pornography." *Id.*

**Facts and Travel**

Turning to the facts of this case, in June 2015, Detective Lieutenant Stephen Riccitelli of the North Smithfield Police Department, who is also a member of the

Rhode Island State Police (RISP) Internet Crimes Against Children Task Force (ICAC), was monitoring peer-to-peer file-sharing networks for child pornography when files suspected to be child pornography were downloaded from IP address 100.10.41.6. Detective Brian Macera, a ten-year veteran of the RISP, viewed the downloaded files and concluded that the files contained child pornography, as defined in § 11-9-1.3.

According to the affidavit attached to the search warrant application, Det. Macera then conducted a search of the American Registry of Internet Numbers and determined that IP address 100.10.41.6 was owned by Verizon. Verizon was served with a subpoena, directing the company to provide the name, address, and telephone number of the subscriber of IP address 100.10.41.6 to the RISP. Verizon identified the subscriber of IP address 100.10.41.6 as Heather Reisner, defendant's wife, and the location of the computer connected with that IP address as 15 Harding Street, West Warwick, Rhode Island.

Detective Macera, armed with that information, applied for a search warrant for 15 Harding Street, West Warwick, and requested that a member of the RISP Computer Crimes Unit conduct a forensic review of seized evidence related to the possession and transfer of child pornography.

The affidavit that Det. Macera used to support his application for the search warrant generally described peer-to-peer networks, explained what hash values are,

and stated that "over time numerous files have been identified through a specific hash value as confirmed child pornography." In detailing what had occurred during the investigation to that time, the affidavit linked files suspected to contain child pornography to the IP address associated with defendant's home address and stated that "files containing suspected child pornography were downloaded."

Detective Macera explained that he viewed the downloaded files and described one of the files as follows:

> "File Name: Jamtien.mpeg
> "Date/Time: June 15, 2015 at 11:42 PM (UTC)
> "HASH Value:
> 2aad88e182cc9c66ccd7ba15aa186ecfac39f370
> "Description: This video file depicts a prepubescent female on the beach removing her bathing suit exposing her genitals."

Significantly, despite having explained that specific hash values have been used to identify numerous files containing child pornography, Det. Macera did not specify that the "HASH Value: 2aad88e182cc9c66ccd7ba15aa186ecfac39f370" matched a hash value for confirmed child pornography or otherwise explain that the hash value at issue had been used to identify Jamtien.mpeg as a file containing child pornography. Detective Macera did not describe or provide any further information for any of the other files that he viewed, and he also did not attach a still image from the video.

A District Court judge approved the search warrant, and soon thereafter, on August 3, 2015, a Monday morning at 6:15 a.m., the RISP executed the search warrant. During the course of the search, RISP seized defendant's computer—a Mac Pro desktop. A police forensic examination of defendant's computer revealed seven videos of child pornography. The defendant waived his *Miranda* rights and was interviewed by the police.

During the interview, defendant was questioned about using BitTorrent[2] software, child pornography, access to Wi-Fi in his apartment, and downloading files. After he was informed about the computer forensics analysis that was to be performed on his computer, defendant said, "Well I need to talk to a lawyer." Nevertheless, RISP did not terminate the interview.[3]

Based on the evidence discovered by the forensic investigation of defendant's computer, an arrest warrant was issued for defendant. The defendant was subsequently charged by information with one count of possession of a computer hard drive that contained videos of child pornography on or about August 5, 2015, in violation of § 11-9-1.3(b)(2), and one count of knowingly mailing, transporting, delivering, or transferring videos of child pornography, in violation of

---

[2] BitTorrent is a "peer-to-peer file-sharing network." *United States v. Cates*, 897 F.3d 349, 352 (1st Cir. 2018).

[3] During a pretrial hearing on defendant's motion *in limine*, the trial justice ruled that any statements made after defendant invoked his right to counsel were inadmissible at trial.

§ 11-9-1.3(b)(1). Before the trial commenced in the Superior Court, defendant moved to suppress the evidence that had been seized during the search, alleging that Det. Macera's affidavit was insufficient to establish probable cause under the Fourth Amendment and state grounds.

After hearing arguments from the state and from defendant, the trial justice issued a written decision denying defendant's motion to suppress. The trial justice ruled that the search warrant's accompanying affidavit contained an adequate description of child pornography, albeit "barely[,]" to support a probable cause determination under the standard set out in *United States v. Brunette*, 256 F.3d 14 (1st Cir. 2001). Specifically, the trial justice reasoned that Det. Macera described the setting (a beach), the female's pose (undressing), the female's attire (bathing suit), and the focal point of the video (a prepubescent female and her genitals). The trial justice distinguished this case from *Brunette*, in that the affidavit here did not "merely 'parrot' the statutory definition of child pornography." *See Brunette*, 256 F.3d at 17.

The trial justice also concluded that the affidavit established probable cause, determining that the image described in the Jamtien.mpeg video file was "likely 'graphic'"—applying the statutory definition of graphic[4]—and "likely lascivious"—

---

[4] According to § 11-9-1.3(c)(8), "'[g]raphic,' when used with respect to a depiction of sexually explicit conduct, means that a viewer can observe any part of the genitals or pubic area of any depicted person or animal during any part of the time that the

before applying the factors set forth in *United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986), *aff'd sub nom. United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987).[5]

Applying the *Dost* factors, the trial justice concluded that (1) because a prepubescent female removing her bathing suit in a public place was an unnatural pose for someone the child's age, an inference could be made that the female in the video was nude or partially nude; (2) the action of undressing in front of a camera suggested a degree of sexual coyness or willingness to engage in sexual activity; and

---

sexually explicit conduct is being depicted." Section 11-9-1.3(c)(6)'s definition of "[s]exually explicit conduct" includes the "[g]raphic or lascivious exhibition of the genitals or pubic area of any person[.]"

[5] In *United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986), the court articulated six factors for evaluating whether a photograph depicted a lascivious exhibition of the genitals. These factors were used as "guideposts" by the First Circuit in *United States v. Amirault*, 173 F.3d 28 (1st Cir. 1999), where the court ruled that an image of a nude minor female standing in a hole in the sand at the beach was not lascivious under the federal pornography statute. *Amirault*, 173 F.3d at 31-32, 35. The *Dost* factors include:

> "1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;
> "2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;
> "3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
> "4) whether the child is fully or partially clothed, or nude;
> "5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;
> "6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer." *Dost*, 636 F. Supp. at 832.

(3) the act of making the video was likely intended to elicit a sexual response from the viewer. As a result, the trial justice was satisfied that the affidavit and description were sufficient to provide "trustworthy information to demonstrate a likelihood that child pornography images or videos were in 15 Harding Street." Accordingly, the trial justice denied the motion to suppress.[6]

Prior to the start of trial, several other pretrial motions were heard. Notably, defendant stipulated that the videos found, including Jamtien.mpeg, contained child pornography. As noted *supra*, the trial justice also precluded the state from admitting the portion of defendant's recorded interrogation that took place after he invoked his right to counsel.

After trial, the jury found defendant guilty of possession of child pornography and not guilty of transferring child pornography. The defendant filed a motion for a new trial, raising the same arguments that he now presses on appeal; the trial justice denied the motion. The defendant was then sentenced to five years' incarceration, suspended, with probation. The defendant was also required to endure additional conditions, including participating in a sex-offender program, registering as a sex offender, abiding by special conditions of probation, and paying assessments. The defendant timely appealed.

---

[6] Despite finding that the affidavit "barely" established probable cause, the trial justice did not undertake an analysis of the "good faith" exception articulated in *United States v. Leon*, 468 U.S. 897 (1984).

# I

## Search Warrant

The first issue on appeal is whether the trial justice erred when he denied defendant's motion to suppress the search warrant, finding that Det. Macera's affidavit provided sufficient information for a probable cause determination. Before this Court on appeal, defendant presses the same arguments that he raised in the Superior Court. Citing *Brunette*, defendant argues that the affidavit prepared by Det. Macera was conclusory in nature and that it failed to provide a detailed description of the images. *See Brunette*, 256 F.3d at 18, 19 (finding the description in an affidavit insufficient to provide probable cause due to its use of conclusory statutory language). He further argues that the District Court judge who issued the warrant, similar to the issuing judge in *Brunette*, did not make an independent determination that the images were child pornography. *See id.* at 18. To demonstrate that Det. Macera's description was inadequate, defendant points out that, in reviewing the motion to suppress, the trial justice held that the description lacked information on two of the six *Dost* factors. The defendant also maintains that a depiction of a minor who is merely nude does not constitute child pornography. *See, e.g.*, *Osborne v. Ohio*, 495 U.S. 103, 112 (1990) (noting that "depictions of nudity, without more, constitute protected expression" even when depicting a minor). Finally, defendant

argues that the good faith exception should not apply based on article 1, section 6 of the Rhode Island Constitution and G.L. 1956 § 9-19-25.

**Standard of Review**

When this Court reviews "a trial justice's decision granting or denying a motion to suppress," we defer "to the factual findings of the trial justice, applying a clearly erroneous standard." *State v. Cosme*, 57 A.3d 295, 299 (R.I. 2012) (quoting *State v. Storey*, 8 A.3d 454, 459-60 (R.I. 2010)). Our review of the determination of whether probable cause existed is *de novo*. *Id.* This Court accords "great deference to the trial justice's probable-cause determination, 'so long as there is a showing of a substantial basis from which to discern probable cause.'" *Id.* (quoting *Storey*, 8 A.3d at 460).

"The Fourth Amendment to the United States Constitution and article 1, section 6, of the Rhode Island Constitution, prohibit the issuance of a search warrant absent a showing of probable cause." *Cosme*, 57 A.3d at 301 (quoting *State v. Byrne*, 972 A.2d 633, 637 (R.I. 2009)). "Probable cause must be ascertained within the four corners of the affidavit prepared in support of the warrant * * * and based on the totality of the circumstances presented in the affidavit." *Id.* (quoting *Byrne*, 972 A.2d at 638). "In making this determination, the issuing magistrate must review the affidavit and, based on the facts contained therein, together with the reasonable inferences that may be drawn from those facts, make a practical, commonsense

- 11 -

determination as to whether there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 301-02 (quoting *Byrne*, 972 A.2d at 638). This Court has held that "the approach to the probable cause question should be pragmatic and flexible." *Byrne*, 972 A.2d at 639 (quoting *State v. Verrecchia*, 880 A.2d 89, 94 (R.I. 2005)). Therefore, "our ultimate inquiry asks whether the magistrate made a 'practical, common-sense determination' that 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Storey*, 8 A.3d at 461 (quoting *Byrne*, 972 A.2d at 638).

## Discussion

This Court has not before addressed the precise issue of a probable cause determination in a case of purported child pornography. However, we do not write upon a blank slate, because this issue has been addressed in the federal courts, including by the First Circuit Court of Appeals in *Brunette*.

In *Brunette*, a customs agent applied for a search warrant after an investigator discovered that the defendant had downloaded thirty-three images of child pornography. *Brunette*, 256 F.3d at 15-16. The affidavit submitted to support the application for a search warrant did not append any of the allegedly pornographic images, nor did it contain a detailed description of the images. *Id.* at 16. Rather, the affidavit merely asserted that the images "met the statutory definition of child pornography" and described the images as "photographs of a pre-pubescent boy

- 12 -

lasciviously displaying his genitals." *Id.* at 15, 16. The magistrate who issued the warrant did so without viewing those images or the other allegedly pornographic images that were eventually discovered on the defendant's computer. *Id.* at 15. Subsequently, the defendant moved to suppress the images contained on the computers that had been seized pursuant to the warrant, arguing that the affidavit had a "nondescript legal conclusion" and that there was not sufficient probable cause to support the issuance of the search warrant because the issuing magistrate had not viewed the images to determine that they were child pornography. *Id.* at 15, 16.

In its review of the grant of the search warrant, the First Circuit held that, "[a]lthough the affidavit included sufficient indicia to link the images to defendant, i.e., that the postings originated from defendant's * * * Internet access account, it did not specify with any detail the basis for believing that those images were pornographic." *Brunette*, 256 F.3d at 17. Further, the First Circuit noted that "[t]he evidence on the nature of the images consisted solely of [the customs agent's] legal conclusion parroting the statutory definition." *Id.* The *Brunette* court concluded that:

> "[a] court reviewing a warrant application to search for pornographic materials ordinarily is unable to perform the evaluation required by the Fourth Amendment if the application is based on allegedly pornographic images neither appended to, nor described in, the supporting affidavit. * * * If copies cannot feasibly be obtained, a detailed description, including the focal point and setting of the image, and pose and attire of the subject, will

generally suffice to allow a magistrate judge to make a considered judgment." *Id.* at 20.[7]

The affidavit in the case at bar, like the affidavit in *Brunette*, included sufficient indicia to link the images to defendant, but it did not contain a still image from the video at issue, nor did it attach the video itself. Furthermore, the description—"This video file depicts a prepubescent female on the beach removing her bathing suit exposing her genitals"—fails to provide any more basis to determine whether the video was child pornography than the description in *Brunette*.[8] *See Brunette*, 256 F.3d at 17; *see also United States v. Battershell*, 457 F.3d 1048, 1051 (9th Cir. 2006) (finding that a "terse description" of an image as "a young female

---

[7] Although the court in *United States v. Brunette*, 256 F.3d 14 (1st Cir. 2001), found that the search warrant was not supported by probable cause, the First Circuit did ultimately uphold the warrant based upon the "good faith" exception articulated in *United States v. Leon*, 468 U.S. 897 (1984). *Brunette*, 256 F.3d at 19-20.

[8] Child pornography is defined in § 11-9-1.3(c)(1) as:

> "any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct where:
> "(i) The production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;
> "(ii) Such visual depiction is a digital image, computer image, or computer-generated image of a minor engaging in sexually explicit conduct; or
> "(iii) Such visual depiction has been created, adapted, or modified to display an identifiable minor engaging in sexually explicit conduct."

- 14 -

(8-10 YOA) naked in a bathtub" was insufficient for a probable cause determination "absent an accompanying photograph[,]" because the description not only failed to state whether the child's genitals or pubic area was visible but also gave the issuing magistrate no basis, other than the agent's "inherently subjective analysis[,]" to determine whether the nudity depicted was lascivious).

Here, Det. Macera's affidavit describes a display of nudity in a public place, but it does not indicate that there was a lascivious exhibition of the depicted child's genitals or pubic area. Moreover, the affidavit does not aver that the genitals or pubic area were the focal points, and the described setting (a beach) was not particularly sexually suggestive. There is also no indication that the image suggested sexual coyness, a willingness to engage in sexual activity, or that the image was "intended or designed to elicit a sexual response in the viewer." *Dost*, 636 F. Supp. at 832. Furthermore, the title "Jamtien.mpeg" is not on its face suggestive of child pornography. *Cf. United States v. Miknevich*, 638 F.3d 178, 184 (3d Cir. 2011) (upholding the validity of a warrant affidavit based on a single file name because "[t]he unmistakable inference arising from [the] highly descriptive file name is that the file's contents include material pertaining to the sexual exploitation of children").

In our opinion, Det. Macera's assertion in his affidavit that the images and videos were child pornography based on his assessment does not rescue the affidavit's short description of Jamtien.mpeg. Indeed, the First Circuit rejected a

- 15 -

similar argument in *Brunette*, making it clear that the agent's legal conclusion that the boy in the photographs was "lasciviously" displaying his genitals was not enough to establish probable cause. *Brunette*, 256 F.3d at 15, 16. "[P]robable cause to issue a warrant must be assessed by a judicial officer, not an investigating agent." *Id.* at 18 (citing *Illinois v. Gates*, 462 U.S. 213, 239 (1983)). The First Circuit noted in *Brunette* that the "inherent subjectivity" involved in determining whether an image is child pornography "is precisely why the determination should be made by a judge, not an agent." *Id.*; *see United States v. Pavulak*, 700 F.3d 651, 662 (3d Cir. 2012) ("Magistrates—not affiants or officers—bear the responsibility of determining whether there exists a fair probability that the sought-after images meet the statutory and constitutional definitions of child pornography.").

Moreover, the trial justice's analysis of the affidavit's twelve-word description of the video further demonstrates the affidavit's insufficiency. In determining whether there was probable cause, the trial justice struggled to apply the *Dost* factors to the one-sentence description, acknowledging that the description provided no basis from which he could determine the focal point of the video or whether the setting was sexually suggestive. The trial justice was unable, based on the affidavit, to evaluate two out of the six *Dost* factors—factors key to identifying whether the video was child pornography or mere nudity. There is nothing manifestly lewd, sexual, or lascivious about a young girl removing her bathing suit

on a beach. After reviewing the affidavit, we are drawn to the conclusion that only one *Dost* factor is demonstrated: nudity. The other factors are simply not present. Although the description need not tick off each and every *Dost* factor, and indeed the First Circuit in *Amirault* held that the "so-called '*Dost* factors' are not exhaustive," *United States v. Amirault*, 173 F.3d 28, 31 (1st Cir. 1999), the law is clear that nudity alone, even of a child, is not enough to support a determination of probable cause. *See, e.g.*, *United States v. Doyle*, 650 F.3d 460, 473 (4th Cir. 2011) (holding that the search warrant affidavit did not supply probable cause where it described photographs as merely "depicting 'nude children'").

Additionally, as set forth *supra*, the affidavit at issue in the case at bar did not allege that "HASH Value: 2aad88e182cc9c66ccd7ba15aa186ecfac39f370[,]" the hash value for the Jamtien.mpeg file, matched a hash value for confirmed child pornography. While the affidavit explained that "over time numerous files have been identified through a specific hash value as confirmed child pornography[,]" it did not specify whether Jamtien.mpeg was one of those files. Such a link within the affidavit may have eased the burden on the trial justice, obviating his attempt to painstakingly apply the *Dost* factors to a twelve-word description of mere nudity.[9]

---

[9] During oral argument, the state explained that only those hash values that are identified as child pornography are flagged by the task force computers. However, that was not made clear in the warrant affidavit.

When an image or video involves sexual acts, a short description may be sufficient to establish probable cause. But when, as here, an image of a nude child is at issue, the question is far more difficult. Subtle differences may often separate a crime from a constitutionally protected image, such as an innocuous family photo or a work of art. In those situations, a judge must have the tools, via either the image itself, a thorough description, or a direct connection between the specific hash value and files containing child pornography, to independently assess whether there is probable cause to believe that an image of a child is pornographic. Neither the District Court judge who issued the warrant nor the trial justice had the benefit of those tools here. We therefore conclude that there was no substantial basis for determining that probable cause existed in this case based upon the language of the affidavit.

**Good Faith**

The state alternatively urges this Court, in a single paragraph in its brief, that, if we were to conclude that the warrant was not supported by probable cause, we should nonetheless adopt the "good faith" exception to the Fourth Amendment as articulated in *United States v. Leon*, 468 U.S. 897 (1984). This Court will not embrace a monumental change to our jurisprudence absent both a factual predicate and a meaningful discussion of the issue; therefore, we decline to address the good faith exception at this time. *See In re Austin B.*, 208 A.3d at 1193.

## II

### Opening Statement

Because we are vacating the conviction based on the lack of probable cause, we need not, and shall not, reach any other issue raised by the defendant on appeal.

### Conclusion

For the reasons set forth in this opinion, we vacate the judgment of the Superior Court. The record may be returned to the Superior Court.


**Justice Goldberg, concurring in part and dissenting in part.** I concur in the majority's decision to decline to reach the good-faith exception to the exclusionary rule in the context of this case, but for different grounds than those set forth in the majority opinion. Because I am convinced that there was an adequate showing of probable cause to support the issuance of the search warrant and am mindful that we have yet to venture into the realm of the good-faith exception, this decision should be left for another day when, in my opinion, we are confronted with a warrant that is not supported by probable cause. Because I unequivocally conclude that the trial justice properly denied the defendant's motion to suppress, I dissent. This conviction should not be vacated.

Unfortunately, the majority's after-the-fact scrutiny of the affidavit is based on a case, relied upon by defendant, that is neither constitutionally mandated nor accepted Fourth Amendment jurisprudence. Its probative force has been diminished by subsequent First Circuit decisions. The majority opinion frames the issue before us as "the precise issue of a probable cause determination *in a case of purported child pornography*" and, citing *United States v. Brunette*, 256 F.3d 14 (1st Cir. 2001), declares that the Court is not writing upon a blank slate. (Emphasis added.) The majority's reliance on *Brunette* is misplaced.

I am unaware of any case in which this Court ever has vacated a criminal conviction after concluding that the search warrant was issued without probable cause. This case should not be the first. Furthermore, since *Brunette* was decided, I know of no case in the nation in which a conviction was vacated on the basis of *Brunette*, a fact that was acknowledged at oral argument. Although federal courts have the safe harbor of the good-faith exception to the exclusionary rule as articulated in *United States v. Leon*, 468 U.S. 897 (1984), I am hard-pressed to find a single case in which *Brunette* controlled and the evidence was suppressed. What is quite clear is that the requirements set forth in *Brunette* are not of constitutional dimension and should in no way be engrafted onto this state's Fourth Amendment jurisprudence.

In *Brunette*, the United States Court of Appeals for the First Circuit adopted the factors set forth in *United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986), *aff'd sub nom. United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987), as the governing standard for a probable-cause determination for suspected child pornography. *Brunette*, 256 F.3d at 17-18. These factors were established in the context of the sufficiency of the evidence in a sentencing enhancement decision and motion for a judgment of acquittal—not a probable cause determination—and were adopted by the First Circuit as the legal standard for evaluating "whether a photograph depicts a lascivious exhibition of genitals[.]" *Id.*; *see United States v. Amirault*, 173 F.3d 28, 30, 31 (1st Cir. 1999).

In *Brunette*, the First Circuit engrafted the *Dost* factors onto a search warrant's probable cause requirement when the suspected images of child pornography are not available for the issuing magistrate to evaluate and the affiant fails to set forth a description of the images based on a series of detailed, factual components, "to allow a magistrate judge to make a considered judgment." *Brunette*, 256 F.3d at 18, 19, 20. This is not the law. *See, e.g.*, *United States v. Shelton*, 418 F. App'x 514, 518 (7th Cir. 2011) (noting that "an affidavit is not defective simply because it could have been better" and concluding that an affidavit presented probable cause where the description of the alleged image was "a 12-year-old girl undressing to a state of complete nudity in a bedroom"); *United States v. Grant*, 490 F.3d 627, 632 (8th Cir.

2007), *cert. denied*, 552 U.S. 1281 (2008) (upholding a search warrant for child pornography based on an officer's conclusion that the images described to him by a computer repairman met the statutory definition of child pornography); *United States v. Battershell*, 457 F.3d 1048, 1053 (9th Cir. 2006) (concluding that "failing to include a photograph in a warrant application is not fatal to establishing probable cause" because "a judge may properly issue a warrant based on factual descriptions of an image"); *State v. McNutt*, 463 P.3d 563, 569 (Or. Ct. App. 2020), *review denied*, 473 P.3d 57 (Or. 2020) (observing that "an experienced officer's assessment that an image or video depicts sexually explicit conduct * * * involving a child" in violation of Oregon statute is an objective conclusion that is "entitled to greater weight in a magistrate's determination of probable cause").

Indeed, the Third Circuit has cautioned against the exacting standard of *Brunette*, observing that

> "a reasonable officer should be forgiven for not meticulously hewing to *Brunette* * * * because the probable cause determination takes into account the totality of the circumstances[;] the amount of information in the affidavit might well have led a reasonable officer to believe that his [or her] failure to attach photos or provide lurid descriptions would be made up for by the remaining details [contained in the affidavit]." *United States v. Dennington*, 399 F. App'x 720, 726 (3d Cir. 2010).

Importantly, since its holding in *Brunette*, the First Circuit has observed that "courts should *generally* not approve a warrant to search for child pornography *based solely*

- 22 -

*on a police officer's assertion* that images he has seen but has not shown to the magistrate constitute such pornography." *United States v. Burdulis*, 753 F.3d 255, 260 (1st Cir. 2014) (emphasis added) (discussing *Brunette*). That is not the case before us. The District Court judge in the case at bar was presented with additional reliable information that pointed to defendant's possession of child pornography. Furthermore, *Brunette*'s "general rule" is now considered a "best practice" in the First Circuit and is not controlling Fourth Amendment criteria.

In *United States v. Syphers*, 426 F.3d 461 (1st Cir. 2005), the First Circuit, in dicta, characterized its holding in *Brunette* as a "best practice[.]" *Syphers*, 426 F.3d at 467; *see United States v. LaFortune*, 520 F.3d 50, 56 n.8 (1st Cir. 2008) (characterizing the "best practice" language of *Syphers* as dicta). This dicta was later held to be a controlling "best practice" in *LaFortune*, in which the court declared it to be "[t]he best practice * * * for an applicant seeking a warrant based on images of alleged child pornography [is] to append the images *or* provide a sufficiently specific description of the images[.]" *LaFortune*, 520 F.3d at 58 (quoting *Syphers*, 426 F.3d at 467). This "best practice" of course is not applicable upon the states, is not constitutionally mandated, and has not been universally recognized. It should not be engrafted onto our jurisprudence.

Rather, the controlling criteria involve a totality of the circumstances test:

> "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the

- 23 -

circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

This standard clearly establishes that "[p]robable cause does not require either certainty or an unusually high degree of assurance. All that is needed is a reasonable likelihood that incriminating evidence will turn up during a proposed search." *United States v. Morel*, 922 F.3d 1, 11 (1st Cir. 2019), *cert. denied*, 140 S. Ct. 283 (2019) (quoting *United States v. Clark*, 685 F.3d 72, 76 (1st Cir. 2012)).

Critically, in the recent case of *Morel*, the First Circuit acknowledged its prior "best practice" admonitions in *LaFortune* and *Syphers*, that "'[a]n officer who fails to follow this approach without good reason faces a substantial *risk* that the application for a warrant will not establish probable cause." *Morel*, 922 F.3d at 11 (emphasis added) (quoting *Syphers*, 426 F.3d at 467). However, faced with a warrant that did not comply with *Brunette* or its progeny, the court in *Morel* appropriately observed that "risk * * * is not a certainty" because a judicial finding of no probable cause is always governed by Fourth Amendment standards. *Id.* Significantly, *Morel* went on to declare that this "'best practice' judicial gloss cannot be imposed onto state courts." *Id.* Its teachings are useful.

- 24 -

In *Morel*, the defendant was convicted of violating 18 U.S.C. § 2252(a)(4)(B), which concerns images showing minors engaging in sexually explicit conduct, defined as "any person under the age of eighteen years * * * [engaged in] actual or simulated * * * lascivious exhibition of the genitals or pubic area of any person[.]" 18 U.S.C. § 2256; *Morel*, 922 F.3d at 3. A police detective in Derry, New Hampshire, applied for a search warrant and neither appended the images he obtained nor provided a description of the ages of the girls in the videos beyond his belief that some of the girls depicted were, or appeared to be, under ten years old and some under thirteen years old. *Morel*, 922 F.3d at 4, 5. "The affidavit did not describe the girls * * * as 'pubescent' or 'prepubescent[,]'" *id.* at 5, which description, relating to specific stages of development of a child's sexual organs, is deemed a significant factor in the probable cause analysis[1] However, the district court judge had been satisfied that the affiant's description of the children in the images as under ten or thirteen years of age was synonymous with a "prepubescent" or "early pubescent" child, based on the officer's training and experience, including his participation in the Internet Crimes Against Children Task Force in New

___

[1] Although the district court, in passing on the validity of the warrant in *United States v. Morel*, 922 F.3d 1 (1st Cir. 2019), indicated that the affidavit "described the nudity and the sexual or sexually suggestive positioning of the girls depicted in each of the six suspected child pornography images[,]" such was not set forth in the opinion or the decision of the trial judge. *Morel*, 922 F.3d at 5.

Hampshire.[2] *United States v. Morel*, 2017 WL 1376363, at \*9 (D.N.H. Apr. 14, 2017). The *Morel* court cited, with approval, the district court's conclusion that the investigating detective's training and experience supported the reliability of his conclusion. *Morel*, 922 F.3d at 12.

Although the issue in *Morel* was the age of the children in the images, rather than the nature of the poses, it is significant that the First Circuit pointed to the affiant's training and experience to support its probable cause conclusion. *Morel*, 922 F.3d at 11, 12 ("The affidavit stated that Detective Richard had been a police officer for over two decades, had received specialized training in child abuse and exploitation cases, had been on the Internet Crimes Against Children Task Force for nearly a decade, and had assisted in the execution of about fifty search warrants related to possession and distribution of child pornography. That training and experience likely informed his belief that the girls depicted in the images were under age eighteen.").

Accordingly, I am firmly convinced that *Brunette*'s holding, now deemed a "best practice judicial gloss[,]" should not be accorded new life in Rhode Island or engrafted upon the search warrant requirements in this state, which has a long

---

[2] The trial judge noted that "[d]escribing children as 'prepubescent' or 'early pubescent' can establish probable cause that the images in question depict child pornography." *United States v. Morel*, 2017 WL 1376363, at \*9 (D.N.H. Apr. 14, 2017).

tradition of careful adherence to Fourth Amendment jurisprudence as developed by the United States Supreme Court. I know of no state court that has done so. I also express my concern that the majority opinion fails to set forth with specificity just what is required to establish probable cause in investigations of suspected child pornography in future warrant applications. Are we adopting *Brunette*? What is the standard for probable cause for a warrant seeking child pornography?

To support its reliance on *Brunette*, the majority also relies on the "[s]ubtle differences" that may separate an image of a nude child that constitutes child pornography from a constitutionally protected image. However, the United States Supreme Court has never held that an application for a warrant for the seizure of obscene films or books "must be evaluated under a 'higher' standard of probable cause than that used in other areas of Fourth Amendment law." *New York v. P.J. Video, Inc.*, 475 U.S. 866, 874 (1986). Rather, "an application for a warrant authorizing the seizure of materials presumptively protected by the First Amendment should be evaluated under the same standard of probable cause used to review warrant applications generally[,]" and the determination of probable cause by a neutral magistrate is sufficient, without "*any suggestion* that the standard of probable cause in the First Amendment area is different than in other contexts[.]" *Id.* at 875 (emphasis added). Child pornography is not protected by the First Amendment. *New York v. Ferber*, 458 U.S. 747, 763, 764 (1982).

In *P.J. Video, Inc.*, the respondents argued that a warrant authorizing the seizure of blockbuster films such as "Debbie Does Dallas" "was not supported by probable cause because the issuing justice had not personally viewed the movies." *P.J. Video, Inc.*, 475 U.S. at 870 n.2, 871. The Supreme Court, citing the landmark holding of Chief Justice Marshall in *Locke v. United States*, 11 U.S. 339 (1813), rejected this contention: "The term 'probable cause,' means less than evidence which would justify condemnation. It imports a seizure made under circumstances which warrant suspicion." *Id.* at 876 (brackets and deletions omitted) (quoting *Gates*, 462 U.S. at 235 (quoting *Locke*, 11 U.S. at 348)). The court went on to recognize that "[f]inely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision." *Id.* (quoting *Gates*, 462 U.S. at 235).

The Supreme Court looked to the *Gates* standard for the sufficiency of the affidavits and addressed the task of the issuing magistrate as "simply to make a practical, common-sense decision whether, given *all the circumstances set forth in the affidavit* before him, * * * there is a fair probability that contraband or evidence of a crime will be found in a particular place." *P.J. Video, Inc.*, 475 U.S. at 876 (emphasis added) (quoting *Gates*, 462 U.S. at 238). Notably, and determinatively in my view, is the oft-cited principle that "the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause

existed." *Id.* (brackets, deletion, and internal citation omitted) (quoting *Gates*, 462 U.S. at 238-39).

Indeed, reviewing courts must bear in mind that an affidavit supporting the issuance of a search warrant is presumptively valid. *United States v. McLellan*, 792 F.3d 200, 208 (1st Cir. 2015). Because the warrant in this case sought evidence of child pornography, an area that is much less subjective, complex, and exacting than obscene books and films, the experienced police detective's opinion that the Jamtien video met the statutory definition of child pornography was not a mere conclusory statement. It was based on actual observation, in the course of a comprehensive police investigation, by trained and experienced police officers who, critically, were alerted by a nationally recognized network and who viewed the downloaded files "and confirmed their content to be consistent with the definition of child pornography as defined in" G.L. 1956 § 11-9-1.3. The officer also described the Jamtien video as "depict[ing] a prepubescent female on the beach removing her bathing suit exposing her genitals."

Because courts are instructed to assess whether there is a fair probability that contraband or evidence of a crime will be found in the place to be searched when First Amendment concerns may be present in the same manner as any other search warrant, *P.J. Video, Inc.,* 475 U.S. at 875, I disagree with the majority's reliance on *Brunette*'s mandate, which includes a laundry list of factors to be set forth in the

affidavit, to be checked off by the magistrate and verified by reviewing courts when copies of the alleged images are not included in the search warrant application:

> "A court reviewing a warrant application to search for pornographic materials ordinarily is unable to perform the evaluation required by the Fourth Amendment if the application is based on allegedly pornographic images neither appended to, nor described in, the supporting affidavit. * * * If copies cannot feasibly be obtained, a detailed description, including the focal point and setting of the image, and pose and attire of the subject, will generally suffice to allow a magistrate judge to make a considered judgment." *Brunette*, 256 F.3d at 20.

In the case at bar, the search warrant was supported by probable cause. Although the majority looks to extrajurisdictional authority and strikes the warrant down, I reach the opposite conclusion by relying on our own jurisprudence.

It is well settled that a search warrant cannot issue absent a showing of probable cause. *State v. Tejeda*, 171 A.3d 983, 996 (R.I. 2017). "We review a trial justice's decision of whether probable cause existed *de novo*." *Id.* at 997. However, we have recognized that "this Court's 'after-the-fact scrutiny of the sufficiency of an affidavit should not take the form of *de novo* review.'" *State v. King*, 693 A.2d 658, 661 (R.I. 1997) (deletion omitted) (quoting *Gates*, 462 U.S. at 236). Rather, "we 'accord great deference to the issuing magistrate's probable-cause determination, so long as there is a showing of a substantial basis from which to

discern probable cause.'" *Tejeda*, 171 A.3d at 996 (quoting *State v. Storey*, 8 A.3d 454, 460 (R.I. 2010)).

"[T]he approach to the probable cause question should be pragmatic and flexible." *State v. Verrecchia*, 880 A.2d 89, 94 (R.I. 2005). In determining whether probable cause exists,

> "the issuing magistrate must review the affidavit and, based on the facts contained therein, together with the reasonable inferences that may be drawn from those facts, make a practical, commonsense determination as to whether 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *State v. Byrne*, 972 A.2d 633, 638 (R.I. 2009) (quoting *Gates*, 462 U.S. at 238).

An affidavit offered in support of a warrant should be "interpreted in a realistic fashion that is consistent with common sense, and not subject to rigorous and hypertechnical scrutiny." *Byrne*, 972 A.2d at 638 (citing *Gates*, 462 U.S. at 235-39); *see Verrecchia*, 880 A.2d at 94 (noting that "an affidavit offered in support of a search warrant should not be judged as if it had been drafted by one schooled in the niceties of the law") (quoting *State v. Nerney*, 110 R.I. 364, 365, 292 A.2d 882, 883 (1972)). Critically, this analysis rests on probabilities. "Probable cause exists when the affidavit demonstrates in some trustworthy fashion the likelihood that an offense has been or is being committed." *Verrecchia*, 880 A.2d at 94 (quoting *United States v. Santana*, 342 F.3d 60, 65 (1st Cir. 2003)). The quantum of proof appropriate in ordinary judicial proceedings is inapplicable to the decision to issue a

warrant. *State v. Ricci*, 472 A.2d 291, 296 (R.I. 1984) ("[T]here is a significant difference between the quantum of proof necessary to establish guilt and the degree of proof necessary to establish the probable cause which justifies the issuance of a search warrant." (quoting *Nerney*, 110 R.I. at 365, 292 A.2d at 883)).

The defendant in this case stipulated that the seized videos constituted child pornography: the precise contraband that was sought in the search warrant application. What is equally clear is that the warrant affidavit was not based solely on the visual description by the affiant. Critically, factors relating to the standard of proof, such as those set forth in *Dost* and examined by the majority, are committed to a factfinder and not the issuing magistrate, who is concerned with probabilities, not trial proof.

The General Assembly has defined "sexually explicit conduct" as including the "[l]ascivious exhibition of the genitals or pubic area of any person[.]" Section 11-9-1.3(c)(5)(v). Although Det. Macera's description may not (and need not) have complied with the *Dost* factors, the detective's averment that he personally viewed the images and concluded that they met the definition of child pornography as defined in the general laws, coupled with the detailed facts from the investigation, certainly leads to a probability that a prepubescent girl removing her bathing suit on the beach exposing her genitals amounts to a lascivious exhibition of the genitalia of a child, affording the issuing magistrate with a substantial basis to issue the warrant.

One need not be a pediatrician to envision the pose a prepubescent girl would assume to expose her undeveloped genitals to the camera. Of course, this is not all that the District Court judge had before him.

The affidavit set forth that on July 29, 2015, Det. Macera—a seasoned Rhode Island State Police detective assigned to the Computer Crimes Unit and the Rhode Island Internet Crimes Against Children (ICAC) Task Force—requested a search warrant for 15 Harding Street, West Warwick, Rhode Island, in order to search and seize electronic devices, records, documents, materials, and passwords "related to the acquisition, possession and transfer of child pornography."

In support of the application, Det. Macera submitted a sworn affidavit describing his "training and experience in the investigation of computer-related crimes and offenses related to the exploitation of children over the Internet[,]" including his involvement with the ICAC Task Force which "supports a national network of multi-agency, multi-jurisdictional task forces engaged in investigations, forensic examinations, and prosecutions related to Internet crimes against children * * *."

Detective Macera described the operation of peer-to-peer networks and stated that he knew "from training and experience that individuals seeking to obtain and share child pornographic movies, images and materials frequently use file-sharing programs." When these file-sharing programs "are installed on a computer they

- 33 -

allow the user, known as a peer, to search the network for pictures, movies, and other digital files by entering a text-based search term." He further averred that when a member of a peer-to-peer network requests a particular electronic file, the member is provided with a list of available electronic files that may be copied from the peer-to-peer network to the requesting member's computer. And that is exactly what the detectives discovered in this case.

The affidavit also stated that peer-to-peer networks assign hash values to electronic files, and that the affiant knew through training and experience, "that over time numerous files have been identified through a specific hash value as *confirmed child pornography*." (Emphasis added.) Indeed, the affiant attested to the magistrate that this identification of confirmed child pornography has been developed "through the combined knowledge of law enforcement members throughout the United States, members of the National Center for Missing and Exploited Children (NCMEC), as well as members of the Internet Crimes Against Children (ICAC) Task Forces across the country." Although the affidavit did not specifically relate the Jamtien video hash value to the comprehensive network developed by law enforcement, a fair inference may be drawn, based on the report from another detective, that a device at the IP address at the address at which defendant lived was actually on a peer-to-peer file-sharing network and "files containing suspected child pornography *were downloaded*." (Emphasis added.) This is a perfectly reasonable and credible

inference. *See Verrecchia*, 880 A.2d at 94 ("The magistrate is permitted to draw reasonable inferences from the affidavit presented to him or her.").  Because a warrant application does not stand on the evaluation of the images set forth by the affiant alone, *United States v. Smith*, 795 F.2d 841, 849 (9th Cir. 1986), "a balanced assessment of the relative weights of all the various indicia of reliability" is required. *Gates*, 462 U.S. at 234.

Detective Macera then recounted the events of June 2015, when he was advised by another member of the ICAC task force of an alert that an IP address linked to defendant "was on a *peer-to-peer file-sharing network*" and "that a direct connection was made to a device" that was connected to that IP address "and *files containing suspected child pornography were downloaded*." (Emphasis added.) Detective Macera testified at the suppression hearing that the software used by the ICAC task force only looks "for [a] known hash value that contains child pornography * * * because it knows * * * it was previously identified as containing child pornography."  He went on to testify that "the computer crimes unit received a download from the file sharing software BitTorrent that had a hash value * * * that was identified as containing child pornography[,]" and the IP address was linked to defendant.[3]

---

[3] Although this averment was not explicitly set forth in the affidavit, the fact that Lt. Riccitelli was alerted by the network about the download permits an inference to be drawn that defendant obtained child pornography.

Detective Macera swore in his affidavit that he had viewed the downloaded files himself "and *confirmed* their content to be consistent with the definition of child pornography" as defined in § 11-9-1.3. (Emphasis added.) A description of the file named "Jamtien.mpeg" was included in the affidavit. The file's hash value was listed, and the video file was described as "depict[ing] a prepubescent female on the beach removing her bathing suit exposing her genitals." A District Court judge approved the search warrant. The trial justice, in a comprehensive written decision, denied defendant's motion to suppress.

The majority opinion, incorrectly I submit, focuses its attention on what is not in the affidavit, rather than conducting its *de novo* review under a totality of the circumstances approach, based on the facts set forth in the affidavit, together with all inferences that may be reasonably drawn from those facts, and "make a practical, commonsense determination as to whether 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Byrne*, 972 A.2d at 638 (quoting *Gates*, 462 U.S. at 238).

In the recent case of *In re Austin B.*, 208 A.3d 1178 (R.I. 2019), this Court reviewed a challenge to a search warrant for child pornography on the basis of lack of probable cause.[4] *In re Austin B.*, 208 A.3d at 1185.

---

[4] The precise issue presented to us in *In re Austin B.*, 208 A.3d 1178 (R.I. 2019), was not whether probable cause existed to believe that the alleged photographs were, in fact, child pornography, but rather whether misinformation relative to the name and

In upholding the warrant, we conceded that while a detective may "have been more thorough in his [or her] investigation, the law does not require him [or her] to do so." *In re Austin B.*, 208 A.3d at 1190. We noted with approval the following procedure:

> "Upon being informed that the [defendant's] IP address * * * was suspected of involvement with child pornography, [the Detective] reviewed the images associated with that IP address and confirmed that the images were *consistent with the definition of child pornography in the statute, based on his training and experience*." *Id.* (emphasis added).

I am of the opinion that a trained police officer, after a careful investigation, is qualified to express an opinion—based on his or her training and experience—that an image he or she has in fact examined constitutes child pornography and that opinion, coupled with other facts obtained during the investigation, is sufficient to establish, in a trustworthy fashion, that an offense has been committed. *See Verrecchia*, 880 A.2d at 94. I am not alone in this belief. A judge issuing a warrant authorizing a search for suspected child pornography is entitled to credit the conclusory opinion of a police detective with training and experience in these matters. *See State v. DiMeco*, 15 A.3d 1204, 1209-10 (Conn. App. Ct. 2011), *cert. denied*, 565 U.S. 1015 (2011) ("[B]ecause of his training and experience in matters

---

physical address in the warrant rendered the warrant invalid as not supported by probable cause. *In re Austin B.*, 208 A.3d at 1185. The search warrant in that case was issued six months before the warrant in the present case. *See id.* at 1183.

concerning pedophiles and sexual predators of children, the trial court was entitled to credit [the officer's] opinion when making its determination of probable cause.").

This Court has long recognized the preference for the warrant requirement, such that "in doubtful cases, the reviewing court should give preference to the validity of the warrant." *Byrne*, 972 A.2d at 639 (brackets omitted) (quoting *United States v. Peacock*, 761 F.2d 1313, 1315 (9th Cir. 1985)). Mindful of this constitutional prerequisite, I am satisfied that the IP address registered to the computer at defendant's address, its connection to a known peer-to-peer network, the hash value of the images, and the affiant's conclusion about the video were sufficient to demonstrate in some trustworthy fashion a fair likelihood that child pornography was at defendant's home. Moreover, the description of the video—"a prepubescent female on the beach removing her bathing suit exposing her genitals"—is sufficient to demonstrate a substantial basis to find probable cause that child pornography would be found at the residence.

While the majority claims that "[t]here is nothing manifestly lewd, sexual, or lascivious about a young girl removing her bathing suit on a beach[,]" we do not substitute our judgment for that of the magistrate. *See Byrne*, 972 A.2d at 638. This also overlooks the averment that the child is "exposing her genitals." To "expose" is "[t]o make visible." The American Heritage Dictionary of the English Language 625 (5th ed. 2011). As discussed *supra*, I see no way in which a prepubescent female

could "expose" her undeveloped genitalia in a casual pose, without specific, sexually explicit positioning. The District Court judge was entitled to draw this inference. *See Byrne*, 972 A.2d at 638.

Accordingly, the search warrant in this case was supported by probable cause based on the sworn affidavit of a trained detective who conducted a thorough investigation; personally examined the video and determined that it was consistent with the statutory definition of child pornography; and described the images for the issuing judge. There is a substantial basis to determine that defendant's computer probably contained contraband. That is all that the Fourth Amendment requires. I see no reason to abandon our established jurisprudence in favor of *Brunette*, which has little Fourth Amendment traction.

Finally, what are the probable cause criteria for search warrants seeking suspected child pornography and why have we changed it?

For the reasons set forth in this opinion, I respectfully dissent in this case. I would uphold the trial justice's decision denying the motion to suppress and affirm the judgment of conviction. Because I conclude that the warrant was sufficient to establish probable cause, I concur in the majority's decision declining to venture into *Leon*'s turbulent waters.

- 39 -


## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Ralph Reisner. |
| **Case Number** | No. 2018-27-C.A. (K2/15-701A) |
| **Date Opinion Filed** | June 30, 2021 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Erin Lynch Prata |
| **Source of Appeal** | Kent County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Brian P. Stern |
| **Attorney(s) on Appeal** | For State: Mariana E. Ormonde Department of the Attorney General<br><br>For Defendant: Kara J. Maguire Office of the Public Defender |